# UNITED STATES DISTRICT COURT
for the
District of Maryland

FILED ___ ENTERED
___ LOGGED ___ RECEIVED

MAY 24 2016

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

| | | |
|---|---|---|
| United States of America<br>v.<br><br>MICHAEL K. WATERS<br><br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>) | Case No.  **16-1355SAG** |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___March 2016___ in the county of _____ in the _____ District of ___Maryland___, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252A(a)(2) | Distribution of Child Pornography |
| 18 U.S.C. § 2252A(a)(5)(B) | Possession of Child Pornography) |

This criminal complaint is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

*Complainant's signature*

Special Agent Christine D. Carlson, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: May 23, 2016

*Judge's signature*

City and state: Baltimore, Maryland

Stephanie A. Gallagher, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Christine D. Carlson, a Special Agent (SA) with the Department of Homeland Security, Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), being duly sworn, depose and state that:

### INTRODUCTION

1. I have been an Agent since June 1996. As part of my daily duties as an HSI agent, I investigate criminal violations relating to child exploitation and child pornography including violations pertaining to the illegal production, distribution, receipt, and possession of child pornography, in violation of 18 U.S.C. §§ 2251, 2252 and 2252A. I have gained experience through training in seminars, classes, and daily work related to conducting these types of investigations. Specifically, I have received formal training through U.S. Customs, HSI, and other agencies in the area of child pornography, pedophile behavior, collectors of other obscene material, and internet crime. I have participated in the execution of numerous search warrants, which involved child exploitation and/or child pornography offenses. Many of the child exploitation and/or child pornography search warrants resulted in the seizure of computers, cell phones, magnetic storage media for computers, other electronic media, and other items evidencing violation of federal laws, including various sections of Title 18, United States Code, Section 2252A involving child exploitation offenses. I have also participated in the execution of numerous search warrants for online accounts, such as email accounts, online storage accounts and other online communication accounts related to child exploitation and/or child pornography. In the course of my employment with HSI, I have observed and reviewed numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media and within online accounts.

2. As a federal agent, I am authorized to investigate violations of laws of the United

1

States and a law enforcement officer with the authority to execute arrest and search warrants issued under the authority of the United States.

3.   I am submitting this affidavit in support of a criminal complaint and arrest warrant for Michael K. WATERS, born in October 1955, for violation of Title 18, United States Code, Sections 2252A(a)(2)(Distribution of Child Pornography) and 2252A(a)(5)(B) (Possession of Child Pornography). The statements in this affidavit are based in part on information provided by Special Agents of HSI, as well as documents and reports prepared by Detectives of the Baltimore County Police Department (BCPD), and on my experience and background as a Special Agent of HSI. Since this affidavit is being submitted for the limited purpose of securing a criminal complaint, I have not included each and every fact known to me concerning this investigation.

## INVESTIGATION OF MICHAEL K. WATERS

4.   On March 6, 2016, a detective from the Baltimore County Police Department, working in an undercover capacity, used a computer to connect to the Internet to conduct an online investigation into the sharing of child pornography on the P2P file sharing network known as BitTorrent. The detective located an IP address 96.244.190.218 associated with a torrent file with an infohash[1] that was identified as being a file of investigative interest to child pornography investigations.

5.   Using a computer running investigative BitTorrent software, the detective directly connected to the device at IP address 96.244.190.218. The device reported it was using BitTorrent client software –UT340B- uTorrent 3.4.

6.   On March 6, 2016, between 0901hrs EDT and 0923hrs EDT, the detective successfully completed a partial download of a video that the device at IP address 96.244.190.218

was making available. The device at IP address 96.244.190.218 was the sole candidate for the download, and as such, the file was downloaded directly from IP address 96.244.190.218. I subsequently reviewed the one video file and concluded, based on my training and knowledge, that the one video file contained a visual depiction of a minor engaging in sexually explicit conduct and is child pornography as defined under 18 U.S.C. § 2256(8). In the one video, the title of which is "Nablot Sucker [3.30m].avi," a prepubescent male is performing oral sex on an adult.

7. A public database query determined that IP address 96.244.190.218 was managed by Verizon. Verizon provided records which established that on March 6, 2016 between 0901hrs EDT and 0923hrs EDT, the period of the download of the relevant file, the IP address 96.244.190.218 was assigned to a female at 102 Shipway, Dundalk, MD 21222, telephone#: 443-825-2226. The female was later identified as Michael WATERS' mother, referred to herein as "mother".

8. On March 15, 2016, BCPD applied for a search and seizure warrant for 102 Shipway, Dundalk, Maryland and granted by the Honorable Judge Tirabassi of the Baltimore County District Court. The search warrant was executed by BCPD on March 17, 2016. Only WATERS' mother was present during the execution of the search warrant.

9. WATERS' mother was advised of her rights per Miranda and stated that she understood her rights and agreed to be interviewed by detectives. WATERS' mother informed detectives as follows: She had one working computer in her home and one smartphone. She lives alone, however, her son, Michael WATERS, had just been released from jail on March 4, 2016 and had come to stay with her from March 4 through March 6. When WATERS arrived at her residence, after being released from jail, she gave him an LG cell phone, which was not activated for cellular use, but still had the capability to access the internet and use wi-fi. After she gave WATERS the

---

[1] An infohash is a unique mathematical algorithm for the contents of a torrent.

3

phone, WATERS asked her for the wi-fi password for her home router, which she gave to him. WATERS left her residence on March 6, 2016 with the LG cell phone. She did not know where her son was staying and did not have any way of getting in touch with him. She did not know if WATERS was on parole or probation. Investigators conducted a forensic triage of the mother's desktop computer and did not find any evidence of child pornography on it, nor did it have any type of file sharing software installed on it.

10. A couple of hours after detectives left the residence, WATERS' mother contacted one of the interviewing detectives and informed him that she had not been honest with him because she knew exactly where her son was and advised that her son was staying with her father at 309 Raleigh Road, Glen Burnie, Maryland. WATERS' mother said she had just visited her son at this address on March 15, 2016, and at that time he still had the LG cell phone that she had given him when he got out of jail.

11. On March 17, 2016, BCPD detectives responded to 309 Raleigh Road, Glen Burnie, Maryland and met with Michael WATERS. WATERS was informed of the investigation at his mother's house. Initially, WATERS believed that detectives were there to arrest him for not checking in with his probation agent. WATERS advised that he had just been released from jail on March 4, 2016 and failed to check in with his probation agent. WATERS was advised by detectives that he was not under arrest and that detectives were there to talk with him about the cell phone that his mother had given him when he got out of jail. WATERS confirmed that his mother had given him a cell phone after his release and he had used it to connect to the wi-fi at her residence. WATERS then stated that he had lost the phone on the light rail the day before. WATERS told detectives that he had another cell phone inside the residence and asked if he could go in and get it. Detectives advised WATERS that he could go inside the residence and retrieve his cell phone.

4

WATERS went inside the residence by himself while detectives waited outside. WATERS returned with a cell phone that was not powered on and had a cracked screen. It was apparent to detectives that WATERS was not telling the truth. WATERS then changed his story and told detectives that he had sold the cell phone his mother had given him for $80 and used the money to buy a gram of cocaine. WATERS advised that he did not check in with his probation agent because he had snorted the entire gram of cocaine. When detectives asked direct and specific questions about the cell phone WATERS had been given by his mother, WATERS admitted that the cell phone was inside the residence at 309 Raleigh Road, Glen Burnie, Maryland. WATERS admitted to using a torrent program on the phone and downloading child pornography to the phone. When asked if WATERS had any computers inside 309 Raleigh Road, Glen Burnie, Maryland, WATERS advised that he had an old computer that does not work and was put away. A detective went to the front door of the residence to speak with WATER'S grandfather, the owner of the residence. The grandfather is elderly and invited the detective inside the residence and to sit down in his living room. The detective noticed a laptop computer on a table with the lid open and thumb drive plugged into it. The detective advised the grandfather of the nature of the investigation and that his residence was going to be secured pending the issuance of a search and seizure warrant. The grandfather advised that he is computer illiterate and the laptop belonged to his grandson Michael (WATERS), and that Michael had been using it.

12. On March 17, 2016 at approximately 1126hrs EDT, BCPD obtained a search and seizure warrant for the residence located at 309 Raleigh Road, Glen Burnie, Maryland. The search warrant was signed by the Honorable Judge Wilson of the District Court of Baltimore County, State of Maryland.

13. When a BCPD Sargent advised WATERS that a search and seizure warrant had been

signed for his residence, WATERS advised that the LG cell phone was in the cat litter box in his bedroom. A search of the cat litter box revealed the LG cell phone, taken apart, and the microSD card removed. Further search of the litter box revealed a Verbatim 16GB microSD card. Upon the detective's return to the residence, WATERS advised the detective that he wished to speak with him again. Detectives and WATERS walked to a pavilion at the park located at the end of Raleigh Road. Detectives interviewed WATERS at a picnic table and the interview was audibly recorded.

14. WATERS was advised of his *Miranda* rights, which he stated he understood and waived. WATERS stated the reason he was not honest from the beginning because he was afraid to go back to jail. WATERS advised he left the cat litter scoop in the litter box because he knew that detectives would be getting the phone out of the litter. WATERS advised the phone had a microSD card in it when his mother gave it to him, but stated he had switched it out with another microSD card that had larger storage capacity and may have dropped the other microSD card in the park over by the playground. A detective searched the area by the playground and did not find a microSD card. WATERS stated that when he got out of jail, his mother gave him the cell phone and he asked her for her wi-fi password. WATERS stated he connected to his mother's wi-fi and downloaded bit torrent file sharing software onto the phone. WATERS further admitted to downloading the video "Nablot Sucker" at his mother's home. WATERS described the video as a 9-10 year old kid "giving head." WATERS later admitted to downloading the same video again because he had deleted the first one. WATERS admitted to walking around the neighborhood with the phone looking for open wi-fi. WATERS admitted to being involved with child pornography prior to his most recent incarceration and estimated he first saw child pornography five years ago. WATERS admitted to using the following search terms when searching for images and videos of child pornography: PTHC, babyj, and cbaby along with typing in ages. WATERS explained how the BitTorrent file

sharing network works using the terms such as "peers" and "seeding." WATERS also stated that he had hooked his phone up to the laptop inside his residence at 309 Raleigh Road, Glen Burnie, Maryland and had recently viewed child pornography.

15. An on-scene forensic triage of the Verbatim 16GB microSD card located in the cat litter box revealed over 100 images and videos depicting children engaged in sexually explicit conduct. One of the videos located on the Verbatim 16GB microSD card is the video described in paragraph 6 above. I have reviewed all of the images and videos located during the on-scene triage of the Verbatim 16GB microSD card and determined that the majority of the images and videos depict children engaged in sexually explicit conduct and are child pornography as defined in Title 18, United States Code, Section 2256(8). By way of example, two of the files found on the Verbatim 16GB microSD card as described as follows:

    a. **1457796864497.jpg** – this image depicts a close up of an adult male penis penetrating a prepubescent female's vagina

    b. **1457796876367.jpg** – this image depicts a minor female sitting on a bed next to an adult male that is naked from the waist down. The minor female is performing oral sex on the adult male.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

**16-1355SAG**

## CONCLUSION

16. Based on the above described information, I believe there is probable cause to believe that WATERS is in violation 18 U.S.C. § 2252A(a)(2) (Distribution of Child Pornography) and 18 U.S.C. § 2252A(a)(5)(B) (Possession of Child Pornography).

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief:

                                              Christine Carlson, Special Agent
                                              Homeland Security Investigations

Sworn and subscribed before me
this 23rd day of May, 2016.

Stephanie A. Gallagher
United States Magistrate Judge

8